## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **WAYNE COLE,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 1:17-00544-WS-N** |
| | ) |
| **CYNTHIA STEWART WHITE,** *et al.*, | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATIONS

This action is before the Court on the motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or alternatively for summary judgment under Rule 56 (Docs. 19, 20) filed by Defendants Cynthia Stewart,[1] Jefferson Dunn, and Ruth Naglich (collectively, "the Movant Defendants").[2]   The Court has referred the motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (1/26/2018 & 1/30/2018 electronic referral).   Plaintiff Wayne Cole has timely filed an omnibus response (Doc. 24) in opposition to the motion, and the Movant Defendants have filed a joint reply (Docs. 26, 27-1, 27-2)[3] to the response, along with objections (Doc. 25) to Cole's evidentiary submissions.   (*See*

---

[1] Though the complaint names "Cynthia Stewart White" as a defendant, the parties' briefing on the present motions is in agreement that this defendant's correct name is Cynthia Stewart.

[2] Out of an abundance of caution, the undersigned gave notice under Federal Rule of Civil Procedure 12(d) of intent to treat the Rule 12(b)(6) motions as Rule 56 motions for summary judgment.   (*See* Doc. 21).

[3] With leave of the Court (*see* Doc. 28), the Movant Defendants filed corrected substitute exhibits to their reply (Docs. 27-1, 27-2) after the motions were under submission.   Accordingly, the undersigned has not considered the initial exhibit submitted with the reply (Doc. 26-1).

Doc. 29 (construing the Movant Defendants' motion to strike as objections to exhibits)).   The motions are now under submission.   (*See* Doc. 23).

## I.     *Legal Standards*

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *E.g.*, *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).   "[G]enerally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim. A district court, however, may dismiss a complaint on a rule 12(b)(6) motion when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."   *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993).

Moreover, because this case involves "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity[,]" the Court must independently "review[ the complaint], before docketing, if feasible or, in any event, as soon as practicable after docketing…" 28 U.S.C. § 1915A(a).   On review, the Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   *Id.* § 1915A(b).   *See also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (under § 1915A, a "district court may dismiss *sua sponte* a complaint…").

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the

complaint. If the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised. Accordingly, the court must consider the allegations in the plaintiff's complaint as true. []A 'facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered. Furthermore,…the district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citations and quotations omitted).

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome of the suit under governing law and it is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted). "Summary judgment is only appropriate if a case is 'so one-sided that one

party must prevail as a matter of law.'" *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (citation omitted). However, a "'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam). In other words, "there must be enough of a showing that the jury could reasonably find for that party … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)). *See also Allen*, 121 F.3d 642, 646 (11th Cir. 1997) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations omitted)). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.'" *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, "'an inference based on speculation and conjecture is not reasonable.'" *Id.* (quoting *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

## II.    *Background*

### A.    **Well-Pleaded Factual Allegations**

Cole is a 68-year-old inmate with the Alabama Department of Corrections ("ADOC") who is in his 43rd year of incarceration serving two life sentences.    Cole is hepatitis C positive, and has been for at least 5 years.    He suffers continual dizziness, and his medical records show the likelihood of hepatic encephalothapy, and cirrhosis of the liver, and a possibility of hepatocellular carcinoma.    (Doc. 1 at 2, ¶ 3).

Cole was diagnosed with cataracts, and a detached retina in his left eye, on December 14, 2015.    At that time, he was an inmate at ADOC's J. O. Davis Correctional Facility in Atmore, Alabama.    Although surgery to save his vision was scheduled, in March 2016, and again in June 2016, the retinal surgery was cancelled and never took place, despite repeated requests from Cole and his family. Cole is now permanently blind in his left eye, and needs further cataract surgery in his right eye.    Defendants refuse to schedule this surgery.    (*Id.*, ¶ 4).    Cole was transferred from J. O. Davis in December of 2016, and is now currently an inmate at Limestone Correctional Facility in Harvest, Alabama.    (*Id.* at 3, ¶ 7).

Cole has suffered from Hepatitis C since at least 2013.    (*Id.* at 3, ¶ 5).    His medical records also show the likelihood of hepatic encephalothapy, and cirrhosis of the liver, and a possibility of hepatocellular carcinoma.    (*Id.* at 2, ¶ 3).    He has received little to no medical care for this condition.    (*Id.* at 3, ¶ 5).    He is in immediate need of the following:

- Treatment for Hepatitis C; specifically Harvoni, and/or other developing medications and treatments.

- A CAT scan, to screen for hepatic encephalothapy.

- An MRI, to screen for heptacellular carcinoma, the end stage of Hepatitis C.

- A liver biopsy, to screen for cirrhosis, and the treatment of a hepatologist.

- Cataract surgery on his right eye.

- Management of the interaction of his several co-morbidities.

(*Id.*, ¶ 8).

## B.    Causes of Action

Based on the foregoing allegations, Cole asserts the following causes of action against all Defendants:

- Count I – a claim under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need in violation of the "cruel and unusual punishment" clause of the Eighth Amendment to the United States Constitution,[4] based on the Defendants' alleged deliberate indifference to Cole's serious medical needs stemming from his cataracts, retinal detachment, and subsequent blindness.

- Count II – a claim under § 1983 for deliberate indifference to a serious medical need in violation of the "cruel and unusual punishment" clause of the Eighth Amendment, based on the Defendants' alleged deliberate indifference to Cole's serious medical needs stemming from hepatitis C, including the cascading medical problems from hepatitis C.

---

[4] "The Eighth Amendment of the United States Constitution forbids 'cruel and unusual punishments.' U.S. Const. amend. VIII. The Eighth Amendment is applicable to the states through the Fourteenth Amendment…The Supreme Court has interpreted the Eighth Amendment to include 'deliberate indifference to serious medical needs of prisoners.' *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)."   *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam).

- Count III – a claim under § 1983 for deliberate indifference to a serious medical need in violation of the "cruel and unusual punishment" clause of the Eighth Amendment, based on the Defendants' alleged deliberate indifference to Cole's serious medical needs stemming from his co-morbities of blindness, dizziness and the cascading effects of hepatitis C.

- Count IV – a claim for discriminatory denial of medical services in violation of the Americans with Disabilities Act ("ADA").

- Count V – a claim for discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*[5]

(*Id.* at 5 – 9).

### III. *Analysis*

### A. Article III Jurisdiction

Dunn and Naglich also assert that the Court lacks Article III jurisdiction to hear Cole's claims because Cole "has not alleged a concrete injury and thus lacks standing…and/or that there is any causal connection between denial of services and Commissioner Dunn and Associate Commissioner Naglich." (Doc. 20 at 6 -7). *See Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) (The "irreducible constitutional minimum of standing" comprises three elements: injury in fact, causation, and redressability." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992))). "A plaintiff has injury in fact if he suffered an invasion of a legally

---

[5] Section "504 states that '[n]o otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' " *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (per curiam) (quoting 29 U.S.C. § 794.)

protected interest that is concrete, particularized, and actual or imminent." *Nicklaw*, 839 F.3d at 1002 (citing *Lujan*, 504 U.S. at 560). Cole clearly alleges that, due to the Defendants' failure to schedule retinal surgery, he is now "permanently blind in his left eye." (Doc. 1 at 2, ¶ 4). He has also alleged that, due to the Defendants alleged failure to treat his various medical issues, he has "suffered, and continues to suffer injury, pain and suffering." (*E.g.*, Doc. 1 at 6). Thus, Cole has sufficiently alleged an injury in fact for purposed of Article III.

Moreover, "[p]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 n.6 (2014). Here, Cole's injuries, allegedly resulting from ADOC's inadequate medical care, are fairly traceable to Dunn and Naglich, given their supervisory authority over ADOC. Dunn and Naglich do not challenge the "redressability" factor necessary to confer Article III standing, and the undersigned concludes that it is "likely, as opposed to merely speculative, that [Cole's] injury will be redressed by a favorable decision." *Lujan,* 504 U.Sat 561 (1992). Thus, Cole has standing to bring this action.

Alternatively, Dunn and Naglich assert that this case is not ripe for purposes of Article III, either because Cole "has not shown that he has tried to address and resolve any issues he may have outside Federal Court, directly and/or indirectly[,]" (Doc. 20 at 6), or "because future events may greatly affect the outcome of the litigation" with regard to his ADA and Rehabilitation Act claims. (*Id.* at 7). Dunn and Naglich do not elaborate on these contentions, and having considered the factors relevant to Article III ripeness, *see, e.g.*, *Beaulieu v. City of Alabaster*, 454 F.3d 1219,

1227 (11th Cir. 2006), the undersigned is not persuaded. Thus, Dunn and Naglich's Rule 12(b)(1) motion to dismiss is due to be **DENIED** to the extent it asserts the Court lacks Article III jurisdiction.

## B. Eleventh Amendment Immunity

The Movant Defendants all argue that, to the extent they are being sued in their official capacities, they are immune from suit under the Eleventh Amendment to the United States Constitution. "[O]fficial capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.'" *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) (per curiam) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985)). Though not expressly stated, Cole's complaint strongly suggests that he is suing the Movant Defendants in their official capacities, given that he characterizes his suit as challenging the actions/inactions of "the Alabama Department of Corrections[ and] its agents, employees, and contractors," and identifies each of the Movant Defendants by her or his official ADOC title in the style. (*See* Doc. 1 at 1).

> The Eleventh Amendment provides sovereign immunity to the states to protect them from suit in federal court without their consent. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Sovereign immunity has also been extended to state officials, acting in their official capacity, where an agency or individual may "be treated as an arm of the State partaking of the Eleventh Amendment Immunity." *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).
>
> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity. *See Lancaster v. Monroe Cty.*, 116 F.3d

1419, 1429 (1997) *abrogated on other grounds by Lake v. Skelton*, 840 F.3d 1334, 2016 WL 6518522 (11th Cir. November 3, 2016).

*Melton v. Abston*, 841 F.3d 1207, 1233–34 (11th Cir. 2016) (per curiam).

Though Cole does not specify under what part of the ADA he is seeking relief in Count IV, his allegations indicate it is Title II,[6] which

> provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.)[]…The Act defines " 'public entity' " to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," § 12131(1)…[T]his term includes state prisons. See *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998). Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. See 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006).

The United States Supreme Court has held that, "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. Here, Cole's ADA claims are premised on the same conduct he relies on to plead his § 1983 deliberate indifference claims. Thus, his ADA claims are not barred by Eleventh Amendment immunity.

---

[6] The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004).

As for Cole's Count V claim for a "violation of Section 504 of the Rehabilitation Act of 1973," 42 U.S.C. "Section 2000d–7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act[,]" and that "[b]y continuing to accept federal funds, []state agencies have waived their immunity." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1293 (11th Cir. 2003) (per curiam).  Cole alleges that ADOC "receives federal funding" (Doc. 1 at 4, ¶ 13), and the Movant Defendants give no indication otherwise.  Thus, Cole's Rehabilitation Act claims are also not barred by Eleventh Amendment immunity.

However, "Congress has not abrogated eleventh amendment immunity in section 1983 cases[, and t]he state of Alabama has not waived its immunity…Article 1, section 14 of the Alabama Constitution of 1901 expressly states that 'the State of Alabama shall never be made a defendant in any court of law or equity.' " *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990).  "Consequently, Alabama state officials are immune from claims brought against them in their <u>official</u> capacities" under § 1983.  *Melton*, 841 F.3d at 1234.  Because the official capacity claims against the Movant Defendants are "only another way of pleading an action against" ADOC, and because "the Supreme Court has held that a suit directly against the Alabama Department of Corrections is barred by the eleventh amendment[,]" *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir. 1988) (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)), the official capacity § 1983 claims in Counts I, II, and III against the Movant Defendants are due to be **DISMISSED** for

lack of subject matter jurisdiction under Rule 12(b)(1). *See Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005) ("The Eleventh Amendment prevents suits in federal court against an unconsenting state by its citizens or citizens of other states…The Eleventh Amendment acts as a jurisdictional bar for any such suit against the state, even under supplemental jurisdiction.").[7]

### C.     Proper Parties to ADA and Rehabilitation Act Claims

"Only public entities are liable for violations of Title II of the ADA[,]" *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010) (citing 42 U.S.C. § 12131; *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998)), and "[t]he Rehabilitation Act prohibits **recipients of federal financial assistance** from discriminating against individuals with disabilities." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1310 (11th Cir. 2007) (emphasis added).   The great weight of authority indicates "there is no individual capacity liability under Title II of the ADA or [the ]R[ehabilitation ]A[ct]." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (per curiam) (unpublished) (citing *Garcia v. SUNY Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." (collecting cases)).   *Accord Berkery v. Kaplan*, 518 F. App'x 813, 814-15 (11th Cir. 2013) (per curiam) (unpublished) (citing *Garcia*, 280 F. 3d at 107).   Thus, Cole's Counts IV and V ADA and Rehabilitation Act claims against all of the natural

---

[7] Cole's counseled response does not acknowledge the Movant Defendants' Eleventh Amendment immunity arguments, and does not attempt to invoke an exception to such immunity.

person defendants in their individual capacities are due to be **DISMISSED** *sua sponte* under § 1915A(b)(1) for failure to state a claim.[8]

Moreover, the Eleventh Circuit Court of Appeals has held that "a private corporation is not a [Title II] public entity merely because it contracts with a public entity to provide some service." *Edison*, 604 F.3d at 1310 (holding that a private prison management corporation operating a Florida state prison was not a "public entity" for purposes of Title II of the ADA). *Accord Morgan v. Christensen*, 582 F. App'x 806, 809 (11th Cir. 2014) (per curiam) (unpublished) ("An 'instrumentality of a State' is a governmental unit, not a private actor or entity. *Edison,* 604 F.3d at 1310. Even if a private actor or entity contracts with a government entity to perform government functions, it does not qualify as a 'public entity' for the purposes of Title II liability. *Id.*").[9]  Per Cole's complaint, Corizon "is a private for-profit corporation that is under a contractual obligation to the Alabama Department of Corrections ('ADOC') to provide medical care for inmates in ADOC Correctional Facilities." (Doc. 1 at 4, ¶ 14).  Thus, Cole's Count IV ADA claims against Corizon and Corizon employees sued in their "official capacities" are also due to be **DISMISSED** *sua sponte* under § 1915A(b)(1) for failure to state a claim.

---

[8] However, authority indicates Cole can still pursue ADA and Rehabilitation Act claims against the state official defendants in their official capacities, *see Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003), and the Movant Defendants have not argued otherwise.

[9] On the other hand, "§ 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding, **including private organizations**, 29 U.S.C. § 794(b)(3)." *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002) (emphasis added).

As such, Cole's Count IV ADA claim may proceed solely against the ADOC employee Defendants in their official capacities, while his Count V Rehabilitation Act claim will proceed against Corizon and all natural person Defendants in their official capacities.

### D.    § 1983 Deliberate Indifference

All Movant Defendants have asserted the defense of qualified immunity as to the § 1983 claims against them in their individual capacities.   "Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial…[T]he driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotations omitted). Accordingly, the United States Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Id.* at 232 (quotation omitted).

"To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority…Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.   The Supreme Court has established a two-part test to determine the applicability of qualified immunity. The threshold inquiry a court must undertake in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. If,

under the plaintiff's allegations, the defendants would have violated a constitutional right, the next, sequential step is to ask whether the right was clearly established." *Cottone v. Jenne*, 326 F.3d 1352, 1357–58 (11th Cir. 2003) (citations and quotations omitted). Because Cole fails to establish that the Movant Defendants have violated the Eighth Amendment, the undersigned need not engage in the full qualified immunity analysis.

"Every claim by a prisoner that he did not receive medical treatment…is not a violation of the Eighth Amendment." *Bingham*, 654 F.3d at 1175 (citing *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)). "To prevail on a claim of inadequate medical treatment, a prisoner must satisfy an objective and a subjective requirement." *Id.* The undersigned concludes that Cole has not satisfied the subjective requirement; therefore, the undersigned need not, and does not, address the objective component.

> To satisfy th[e subjective] requirement, a prisoner must show the prison official's: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004). Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. *Id.* A "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 106, 97 S. Ct. at 292.
>
> A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta County,* 21 F.3d 388, 393 (11th Cir. 1994). Likewise, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate

indifference. *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer,* 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment. *Young v. City of Augusta, Ga.,* 59 F.3d 1160, 1169 n.17 (11th Cir. 1995).

*Id.* at 1176. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

Where an inmate receives medical treatment but desires different modes of treatment, the care provided does not amount to deliberate indifference. *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). A difference in medical opinion does not establish deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Whether governmental actors should have employed "additional diagnostic techniques or forms of treatment" is a "classic example of a matter for medical judgment" and, therefore, is not an appropriate basis for liability under the Eighth Amendment. *See Estelle*, 429 U.S. at 107, 97 S. Ct. 285 (holding that whether to order an x-ray or additional diagnostic treatment is a matter for medical judgment).

*McLeod v. Sec'y, Fla. Dep't of Corr.*, 679 F. App'x 840, 843 (11th Cir. 2017) (per curiam) (unpublished).

Cole's response characterizes his deliberate indifference claims as based on alleged delays in necessary treatment for nonmedical reasons. (*See* Doc. 24 at 3). The record, however, does not support a finding of unconstitutional delay in treatment. With regard to Cole's eye issues – cataracts and a detached left retina – Cole alleges that "surgery, to save his vision, was scheduled, in March, and again, in June of 2016," but that "the retinal surgery was cancelled and never took place,

despite repeated requests from [Cole], and his family[,]" leaving Cole "permanently blind in his left eye." (Doc. 1 at 2, ¶ 4). Cole further claims he "needs further cataract surgery in his right eye" but that "Defendants refuse to schedule this surgery." (*Id.*). In response to these allegations, the Movant Defendants present the affidavit of Brandon Kinard, a registered nurse who has been employed as an ADOC Regional Clinic Manager since January 2006. (Doc. 19-1). Kinard avers that he has reviewed Cole's medical records and the present complaint. (*Id.* at 2). Contrary to Cole's allegations, Kinard avers that, "[p]er the medical records, retinal surgery was never scheduled in March or June and was not cancelled in either month either." (*Id.*).

Kinard further explains the course of treatment Cole received for his eye issues, as detailed in the medical records reviewed. On December 7, 2015, Dr. Michael Bradford evaluated Cole, diagnosed near complete retinal detachment in the left eye, and recommended referral to a retinal specialist for surgery. (*Id.*). On December 21, 2015, Dr. Ram Peddada evaluated Cole and assessed total left-eye retinal detachment. (*Id.*). Dr. Peddada recommended surgery to repair the retinal detachment following cataract surgery but gave a poor prognosis of detachment surgery due to the long-standing nature of the condition. (*Id.* at 2 – 3). Cole underwent cataract surgery for his left eye on March 31, 2016, with a follow-up evaluation the next day performed by Dr. Sebastian Heersink. (*Id.* at 3). Dr. Heersink also assessed total left-eye retinal detachment and advised that the success of proceeding with corrective surgery was fair, but he further recommended

that Cole heal from his cataract surgery before discussing retinal detachment surgery options. (*Id.*). Dr. Heersink further advised Cole that he might not have vision following detachment surgery or might eventually need enucleation.[10] (*Id.*). Cole ultimately had detachment surgery on July 12, 2016, but a follow-up visit indicated that his left-eye retina had again detached. (*Id.*). Optometrist Dr. Hooks has confirmed that Cole is blind in his left eye. (*Id.* at 3 – 4). Kinard does "not note in the chart where cataract surgery on his right eye has been recommended" and points out that Dr. Hooks did not recommend right-eye cataract surgery when he evaluated Cole on February 8, 2017. (*Id.* at 4).

In response, Cole "accepts the corrections of fact, as set out in the Affidavit of Brandon Kinard, with respect to the dates and substance of medical diagnosis and interventions, as reflected in plaintiff's medical records from the Department of Corrections and Corizon, Inc., but continues to maintain that the delay in surgery, for his detached retina, was not performed in a timely manner, which likely resulted in the failure of that surgery, and the complete loss of sight in plaintiff's left eye." (Doc. 24 at 4 – 5). However, Cole has presented no evidence to support this causation theory, nor has he presented any evidence indicating that any of the Movant Defendants were in any way responsible for this delay in surgery.[11]

---

[10] In medicine, "enucleate" means "remove (a tumor or an eye, for example) whole from an enveloping cover or sac." *Enucleate*, The American Heritage Dictionary of the English Language (3d ed. 1996).

[11] As the Movant Defendants correctly argue, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Instead, supervisory liability under §

Indeed, per Kinard's affidavit, which Cole substantially "accepts," it was Dr. Heersink on April 1, 2016, who recommended that detachment surgery be delayed until Cole's cataract surgery had healed, with the surgery ultimately taking place approximately three-and-a-half months later. Moreover, Dr. Heersink only gave a "fair" prognosis for detachment surgery, while Dr. Peddada gave a "poor" prognosis due to the "long-standing" nature of the condition. Cole's claim that the delay in surgery "likely resulted in the failure of that surgery" is simply a lay person's unsupported "correlation equals causation" speculation and is insufficiently substantial to overcome the medical evidence presented by the Movant Defendants.[12]

As for Cole's hepatitis C, his complaint conclusorily alleges that he "has received little to no medical care for this condition" and proceeds to detail "a reasonable medical course of action" that he "is in immediate need of…" (Doc. 1 at 3). Kinard's affidavit states that, under the guidelines ADOC follows for evaluating and managing inmates with hepatitis C (the same guidelines used by the Federal Bureau of Prisons since 2016), Cole is classified as "low priority for medication treatment at this time…" (Doc. 19-1 at 5). Kinard further states that Cole's

---

1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and quotation omitted).

[12] The undersigned recognizes that this case is still in its early stages, and that discovery has not yet even commenced. *See* Fed. R. Civ. P. 26(d)(1). However, Cole, who at all times in this action has been represented by counsel, has not requested that the Court defer consideration of, or allow discovery prior to ruling on, the present motions. *See* Fed. R. Civ. P. 56(d).

"treatment plan includes chronic care visits along with lab tests to monitor his liver and other body functions as ordered by the treating clinician" and that he "has no laboratory signs or clinical symptoms of cirrhosis" according to his most recent evaluations. (*Id.*). Kinard asserts that, due to Cole's "low priority" classification, "there is no reason [for him] to see a hepatologist" but that ADOC employs a "licensed Infectious Disease Specialist" to evaluate and treat hepatitis C patients. (*Id.*). Kinard also explains why various aspects of Cole's proposed "medical course of action" are either unnecessary or are already being met through alternative means. (*See id.* at 4 – 5).

In response, Cole presents the "affidavit of Robert M. Williams, M.D., as "set[ting] out, in exhaustive detail, the state of medicine, and the standard of care, with respect to diagnosis and treatment of Hepatitis C, and its resulting medical problems, as well as the impact of the continuing refusal of the defendants to treat his illness…" (Doc. 24 at 4).[13] However, a review of the affidavit (Doc. 24-1) shows that Dr. Williams simply offers a different opinion on the proper course of treatment

---

[13] Cole also attaches to his response an order entered by a district judge of the Northern District of Florida in a different lawsuit "[a]s illuminative of the state of the Hepatitis C crisis in prison populations." (Doc. 24 at 4; Doc. 24-1). However, it would be improper for the Court to draw any determinative conclusions in this action from that order as to "the state of the Hepatitis C crisis in prison populations." *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("It recognized that a court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." (citation and quotations omitted)). Accordingly, on this basis, the undersigned declines to consider the Florida district court order, and the Movant Defendants' objections to that exhibit (Doc. 25 at 5 – 6) are **MOOT**.

for hepatitis C.  *See Estelle*, 429 U.S. at 107–08 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice…The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand.").[14]  While Dr. Williams certainly believes that ADOC could be doing more, nothing in his affidavit suggests that the treatment Cole is currently receiving is so deficient as to constitute unconstitutionally cruel and unusual punishment.[15]

---

[14] Dr. Williams says nothing regarding treatment of Cole's eye issues.

[15]     While "[g]rossly incompetent or inadequate care can constitute deliberate indifference," *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989), it must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness…"  *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  As noted previously, Cole does not rely on this theory of deliberate indifference, instead characterizing his deliberate indifference claims as being based on alleged delays in necessary treatment.  Regardless, Cole has failed to present any evidence showing that the medical care he is receiving rises to such a level.

     Cole's Count III deliberate indifference claim is premised on the Defendants' alleged failure to treat "his co-morbities of blindness, dizziness and the cascading effects of Hepatitis C."  (Doc. 1 at 7).  However, Cole does not rely on, or even mention, this theory in his response to the present motions.  Accordingly, he has abandoned his Count III claim.  *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (citation omitted)); *Fischer v. Fed. Bureau of Prisons*, 349 F. App'x 372, 375 n.2 (11th Cir. 2009) (per curiam) (unpublished) (holding that plaintiff waived claim by not addressing it in response to a defendant's motion for summary judgment).

Accordingly, Cole's § 1983 deliberate indifferent claims against the Movant Defendants in their individual capacities are due to be **DISMISSED** under Rule 56.[16]

### E. Discrimination under ADA and Rehabilitation Act

"ADA and RA claims are governed by the same substantive standard of liability." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 830 (11th Cir. 2017).

> Title II of the ADA states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision provides private parties with a private right of action to enforce the ADA's protections. *See Bircoll v. Miami–Dade Cnty.,* 480 F.3d 1072, 1081 (11th Cir. 2007). To prevail, a private plaintiff must prove three elements:
>
> > (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.
>
> *Id.* at 1083 (citing *Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir. 2001)).

---

[16]    Because the undersigned has concluded that Cole failed to show a constitutional violation for purposes of § 1983, and that Stewart and Dunn are only subject to suit in their official capacities under the ADA or the Rehabilitation Act (effectively making those claims against ADOC), the undersigned need not consider Stewart and Dunn's argument that they are not liable for any claim because they do not make decisions on providing medical care for inmates and are not in charge of the day-to-day operations at the J.O. Davis or Limestone facilities.

Additionally, because Dr. Williams's affidavit fails to create a genuine issue of material fact even when considered in full, the Movant Defendants' objections to his affidavit (*see* Doc. 25 at 2 − 5) are **MOOT**.

*Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011) (footnote omitted).

Dunn and Naglich, but not Stewart, conclusorily argue that Cole's ADA and Rehabilitation Act claims should be dismissed because his "Complaint does not allege facts showing that the Defendants purportedly denied him access to medical services 'by reason of' his alleged disabilities." (Doc. 20 at 4 – 5).[17] However, under the ADA, a "plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009) (per curiam) (unpublished) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) ("[T]he equal protection clause prohibits only intentional discrimination,…but at least the ADA and the RA recognize disparate treatment and reasonable accommodation theories as well.")). At the very least, Cole's complaint plausibly suggests a failure to make reasonable accommodations in the medical treatment he is receiving for his disabilities.

---

[17] In their joint reply, the Movant Defendants assert that Cole has waived his ADA claim by failing to address this argument in his response to their motions. (*See* Doc. 26 at 2). First, Stewart did not raise this particular argument in her motion. Second, this argument is clearly brought under Rule 12(b)(6) rather than Rule 56, as it challenges the sufficiency of the complaint, rather than the evidence. This Court has declined to apply the summary judgment "abandonment" rule to motions to dismiss. *See Gailes v. Marengo Cnty. Sheriff's Dep't*, 916 F. Supp. 2d 1238, 1243 (S.D. Ala. 2013) (Steele, C.J.) ("[U]ntil the Eleventh Circuit (or Supreme Court) speaks more clearly to the issue or a sister Court (or litigant) provides a more compelling rationale, the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss."); *Todd v. State Farm Fire & Cas. Co.*, No. CV 18-0175-WS-C, 2018 WL 2250880, at *1 n.1 (S.D. Ala. May 16, 2018) (Steele, J.) (similar).

Accordingly, Dunn and Naglich's Rule 12(b)(6) motion to dismiss Cole's ADA and Rehabilitation Act claims on the foregoing basis is due to be **DENIED**.[18]

## IV. *Conclusion*

In accordance with the foregoing analysis, and pursuant to § 636(b)(1)(B)-(C) and Rule 72(b)(1), the undersigned **RECOMMENDS** that the Movant Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or

---

[18] The Movant Defendants also conclusorily assert: "To the extent Plaintiff's claims fall outside the applicable statute of limitations, Plaintiff is time barred from bringing them. For instance, Plaintiff's claims relating to his Hepatitis C, which he claims to have had since at least 2013, are barred outside the applicable statute of limitations." (Doc. 19 at 7; Doc. 20 at 9). Not only have the Movant Defendants failed to identify what the applicable statute of limitations is for each of Cole's claims, they also fail to appreciate that the statute of limitations does not run from the date Cole contracted his various ailments, but from when the Defendants allegedly provided him deficient medical care. *See Baker v. Sanford*, 484 F. App'x 291, 293 (11th Cir. 2012) (per curiam) (unpublished) ("Generally, accrual occurs when the prisoner knows or should know that he has suffered the injury that forms the basis of his complaint and can identify the person who inflicted the injury. *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir. 2003). However, an 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.' *Lavellee v. Listi,* 611 F.2d 1129, 1132 (5th Cir. 1980). The critical distinction in the continuing violation analysis is whether the prisoner complains 'of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.' *Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir. 2003) (internal quotation marks omitted). []Here, we conclude from the record that the district court erred in dismissing Baker's complaint for failure to state a claim upon which relief could be granted because his claims were not barred by the four-year statute of limitations. Baker's amended complaint alleged that although he specifically requested medical treatment for his ongoing fungal infection multiple times in 2007 and 2010, prison medical staff refused his requests. Further, he incorporated various grievance forms documenting these unsuccessful requests for treatment. Therefore, Baker properly alleged that the prison officials' prolonged failure to provide adequate medical treatment despite his repeated grievances constituted a continuous injury during the statute of limitations period."). Accordingly, the Movant Defendants' motions to dismiss on statute-of-limitations grounds are due to be **DENIED**.

alternatively for summary judgment under Rule 56 (Docs. 19, 20), be **GRANTED in part** and **DENIED in part**, as follows:

1. The official capacity § 1983 claims in Counts I, II, and III against the Movant Defendants are due to be **DISMISSED** for lack of subject matter jurisdiction under Rule 12(b)(1) because they are barred by Eleventh Amendment immunity.

2. The individual capacity § 1983 claims in Counts I, II, and III against the Movant Defendants are due to be **DISMISSED** under Rule 56, as are the official capacity claims as an alternative to dismissal under Rule 12(b)(1).

3. The motions are otherwise due to be **DENIED**.

The undersigned further **RECOMMENDS** the Court *sua sponte* dismiss the following claims under 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: the Count IV ADA claims and the Count V Rehabilitation Act claims against all of the natural person defendants in their individual capacities, and the Count IV ADA claim against Corizon and Corizon employees sued in their "official capacities."

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under

Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 13th day of June 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**